Garry, J.
(dissenting). I respectfully dissent, finding that the evidence of defendant’s alleged previous possession of a .25 caliber gun should have been prohibited by application of the Molineux rule. As neither of the two required elements of the “identity” exception to this rule was shown by clear and convincing evidence, admission of this testimony was an abuse of discretion as a matter of law. Considered in light of the other proof at trial, this error requires reversal.
The Molineux rule limits the admissibility of evidence of prior uncharged crimes, as such evidence is so inherently prejudicial that it may induce a conviction for the wrong reasons (see People v Cass, 18 NY3d 553, 559 [2012]). The so-called “identity” or *1255 “modus operandi” exception is applied only “in limited circumstances” (People v Toland, 284 AD2d 798, 803 [2001], lv denied 96 NY2d 942 [2001] [internal quotation marks and citation omitted]), and requires clear and convincing proof of both “the identity of the defendant as the perpetrator of the prior crimes” and “that the modus operandi of the crimes is so unique as to make the evidence highly probative” (People v Neu, 126 AD2d 223, 225 [1987], lv denied 70 NY2d 652 [1987]; see People v Latimer, 24 AD3d 807, 809 [2005], lv denied 6 NY3d 849 [2006]). “[A] [t]rial [j]udge who admits evidence of an uncharged crime on the issue of identity on less than clear and convincing proof of both a unique modus operandi and of [the] defendant’s identity as the perpetrator of the crime abuses his [or her] discretion as a matter of law” (People v Robinson, 68 NY2d 541, 550 [1986]).
Where these elements are established by this standard, the probative value of the evidence must then be balanced against its potential for prejudice. This balancing requires “special care,” and mere reliance on other cases in which similar evidence has been found to be admissible does not suffice (People v Wlasiuk, 32 AD3d 674, 677 [2006], lv dismissed 7 NY3d 871 [2006] [internal quotation marks and citation omitted]); a “case-specific” analysis is necessary (People v Westerling, 48 AD3d 965, 966 [2008]; accord People v Tyrell, 82 AD3d 1352, 1355 [2011], lv denied 17 NY3d 810 [2011]). Here, County Court merely recited the balancing standard in a conclusory manner. The record fails to reveal any analysis of the required elements 0compare People v Burkett, 101 AD3d 1468, 1471 [2012], lv denied 20 NY3d 1096 [2013]; People v Tyrell, 82 AD3d at 1355), and—upon independent review—fails to support the admission of this evidence.
The proof of defendant’s alleged prior crime allowed here was the testimony of a single witness, Robert Cruz, who described an incident that had occurred roughly 21/2 months earlier, in which he claimed to have seen defendant pull out a .25 caliber gun at the same apartment complex where the victim was shot with a .25 caliber weapon. Cruz testified that on the earlier occasion, he and a number of relatives—several of whom he identified by name—were watching a fight on the grounds of the apartment complex, that Cruz recognized defendant among the other onlookers, that defendant pulled out a weapon and “[everybody started yelling, ‘[g]un’ ” and that “Street Crimes came up there with a camcorder, you know, the police, and I seen them come up there with a camcorder and stuff.” Despite the testimony regarding police involvement, the People did not *1256 substantiate Cruz’s account with evidence that police had in fact responded to a fight or gun-related incident on this occasion, nor was there any testimony offered by Cruz’s relatives or any other witnesses supporting his claim that “everybody” reacted to the gun (compare People v Wandoloski, 128 AD2d 568, 569 [1987]).[1] There was no specific description of the gun, and there was no other evidence revealing that defendant had ever possessed a gun or other weapon.
Cruz readily acknowledged that he belatedly reported this alleged incident to police only because he was hoping for favorable treatment in regard to a criminal charge then pending against him, and only after he had telephoned several friends from jail to acquire information that he could use for this specific purpose; he later acknowledged at trial that the short sentence he subsequently received on the pending charge “more than likely” reflected consideration for his cooperation. Further, he described an extensive history of prior crimes, incarcerations, plea bargains and other brushes with the law in a manner that called his veracity and credibility into significant question. While none of this rendered Cruz’s testimony incredible as a matter of law, his uncorroborated, self-serving claims do not constitute clear and convincing proof that defendant perpetrated the earlier offense (see People v Robinson, 68 NY2d at 550; People v Crawford, 4 AD3d 748, 748-749 [2004], lv denied 2 NY3d 797 [2004]; compare People v Kindred, 60 AD3d 1240, 1242 [2009], lv denied 12 NY3d 926 [2009]).
Further, there is no clear and convincing proof that the two incidents involved a sufficiently unique modus operandi “to compel the inference that . . . defendant committed both” (People v Beam, 57 NY2d 241, 251 [1982] [emphasis added]; accord People v Agina, 18 NY3d 600, 603 [2012]). As above, Cruz described the gun he had allegedly seen solely by its caliber. No witness saw the gun that injured the victim, and that gun was never found. A firearms examiner reported that the shot that struck the victim could have been fired by any of a list of weapons too long for publication.[2] The instant matter is thus readily distinguished from other cases where evidence of possession of a weapon has been admitted under the identity exception, as they have involved weapons with distinctive characteristics (see e.g. People v Brown, 266 AD2d 863, 863 [1999], lv denied *1257 94 NY2d 860 [1999] [silver .380 caliber handgun]; People v Sheriff, 234 AD2d 894, 895 [1996], lv denied 90 NY2d 910 [1997] [chrome-plated handgun]) or possession on multiple occasions, or so close in time to the charged crime as to give rise to an inference that the same weapon was used (see e.g. People v Portee, 56 AD3d 947, 949-950 [2008], lv denied 12 NY3d 820 [2009] [three witnesses said the defendant “routinely” carried weapon of caliber used in charged offense]; People v Rivera, 281 AD2d 702, 703 [2001], lv denied 96 NY2d 805 [2001] [prior and subsequent possession of a firearm “resembling” the one used in the charged crime]; People v Chamberlain, 96 AD2d 959, 960 [1983] [the defendant possessed a similar weapon two weeks before charged crime and attempted to dispose of it immediately afterward]; see also People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012] [the defendant’s prior possession of a .40 caliber weapon demonstrated his “familiarity with and access to weapons,” although it was not directly linked with the .40 caliber weapon used in the charged crimes]).
The mere fact that defendant was allegedly seen with a .25 caliber weapon on an occasion over two months prior to the crime does not reveal any unique and distinctive modus operandi, nor a “distinctive repetitive pattern” (People v Arafet, 13 NY3d 460, 466 [2009] [internal quotation marks and citation omitted]; see People v Allweiss, 48 NY2d 40, 47-48 [1979]). The only behavior described was the act of pulling out a gun—there is nothing unique or distinctive about this act, standing alone— and the weapon was not fired during the alleged earlier incident. Defendant’s mere presence in the same place twice is certainly not unusual, as other people were also present on both occasions. There was simply no evidence that might be considered “ ‘so unique that the mere proof that . . . defendant had committed a similar act would be highly probative of the fact that he committed the one charged’ ” (People v Arafet, 13 NY3d at 466, quoting People v Condon, 26 NY2d 139, 144 [1970]; see People v Pittman, 49 AD3d 1166, 1167 [2008]).
In the absence of clear and convincing proof of either of the two required elements—that defendant perpetrated the earlier uncharged incident or that he used a distinct modus operandi— Cruz’s testimony was so lacking in probative value that it .was necessarily outweighed by its potential for prejudice, and its admission was an abuse of discretion as a matter of law (see People v Robinson, 68 NY2d at 549-550; see also People v Hudy, 73 NY2d 40, 56 [1988], abrogated on other grounds 529 US 513 [2000]). Finally, although the other trial evidence upon which defendant was convicted was legally sufficient, it was not *1258 overwhelming. This error was not harmless, and the judgment of conviction should be reversed. Ordered that the judgment is affirmed.

. County Court did not conduct a Molineux hearing, but relied upon a transcript of Cruz’s testimony from defendant’s earlier mistrial on the same charges.

. This expert later testified that approximately 40 weapons with varying characteristics could have been used.